IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | CRIMINAL NO. 16-218-1 |
| JEROME WOODS : | |
| : | |

## MEMORANDUM

**Perez, J.**                                                                                         **December 9, 2025**

This criminal matter was reassigned to the Court from Honorable R. Barclay Surrick, who presided over the trial proceedings, sentencing, and post-conviction proceedings. Before the Court is Defendant Jerome Woods's pro se Motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Woods principally contends that his prior counsel rendered constitutionally ineffective assistance and that the Court committed various errors related to his guilty plea and sentencing. The Government opposes the Motion. For the reasons below, the Motion is denied. No evidentiary hearing is required, and no certificate of appealability will issue.

I.   **PROCEDURAL HISTORY**

On August 9, 2017, a federal grand jury charged Jerome Woods in a second superseding indictment with drug-trafficking and money-laundering offenses, including conspiracy to distribute marijuana and conspiracy to commit money laundering. Woods and several co-defendants initially pleaded not guilty and proceeded to trial in January 2017. *See* ECF Nos. 55, 62, and 564.

A few days into the jury trial, Woods and certain co-defendants negotiated a global resolution. As to Woods, he agreed to plead guilty pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C)—a "C-plea" in which the parties agree to a specific recommended sentence. Under

that agreement, Woods's proposed prison term was 228 months. ECF No. 601. The Court permitted Woods to enter the C-plea and scheduled sentencing for a later date, when the Court would determine whether to accept or reject the stipulated disposition. ECF No. 672.

At that time, Woods was represented by attorney William Spade, who had represented him at trial and at the initial guilty-plea hearing on the C-plea. Before sentencing on the C-plea, Woods requested new counsel. The Court therefore held a hearing on June 1, 2018—originally scheduled as Woods's sentencing date—to address his request for substitution of counsel before proceeding to sentencing. At that hearing, the Court relieved Spade and appointed Stephen LaCheen to represent Woods. ECF Nos. 667, 668, 672.

After new counsel was appointed, Woods changed his mind about being bound to the C-plea's stipulated sentence. He still intended to plead guilty but sought to withdraw the C-plea and instead plead guilty pursuant to an open plea, *i.e.*, without an agreed-upon sentence. The Court granted the motion, and at a second change-of-plea hearing in September 2018, Woods withdrew his earlier guilty plea on the C-plea agreement and entered an open plea to the same counts. *See* ECF Nos. 715, 745, and 746.

Sentencing occurred in February 2019. The parties advocated for different sentences. Woods, through his attorney Mr. LaCheen, sought 120 months, advancing numerous grounds for downward departure or variance; the Government recommended 240 months. *See* ECF No. 884. The Court made clear that Woods faced an advisory Guidelines recommendation of life imprisonment, resolved the remaining objections, and ultimately imposed 228 months' imprisonment—the same term contemplated by the withdrawn C-plea. *Id.* Woods filed a timely direct appeal and in January 2020, the Third Circuit affirmed his sentence. ECF No. 995.

On June 21, 2021, Woods filed the instant pro se § 2255 motion, arguing that counsel was ineffective and that the Court erred by: (1) misapplying the First Step Act at sentencing; (2) accepting a guilty plea that was not knowing and voluntary; (3) proceeding despite Woods's claimed difficulty hearing the proceedings; (4) depriving him of his right to a fair trial; (5) rejecting or failing to credit his downward departure and variance arguments; (6) finding that he remained a member of the charged conspiracy through 2016; and (7) accepting his guilty plea to the money-laundering counts despite his asserted innocence. This matter, which has various other outstanding motions by Defendant and his Co-Defendants, was reassigned to this Court on November 6, 2025.

## II.    LEGAL STANDARD

A federal prisoner may obtain relief under § 2255 only if his sentence was imposed in violation of the Constitution or laws of the United States, the Court lacked jurisdiction, the sentence exceeded the statutory maximum, or the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The Court need not hold an evidentiary hearing where the motion and record conclusively show the prisoner is not entitled to relief. 28 U.S.C. § 2255(b).

Where, as here, the defendant entered a plea agreement containing a collateral-attack waiver, the waiver is generally enforceable so long as it was knowing and voluntary and enforcing it would not work a miscarriage of justice. The waiver language in Woods's plea agreement expressly limits collateral review to enumerated exceptions, including an ineffective-assistance claim.

To prevail on an ineffective-assistance claim, a petitioner must satisfy *Strickland v. Washington* by showing (1) deficient performance, meaning counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) prejudice, meaning a reasonable probability that, but for counsel's unprofessional errors, the result of the

3

proceeding would have been different. 466 U.S. 668, 687–88, 694 (1984). In the guilty-plea context, prejudice generally requires a showing that, but for counsel's errors, the defendant would have insisted on going to trial.

### III. DISCUSSION

#### A. Waiver of Collateral Review

As a threshold matter, Woods's written plea agreement contains an explicit waiver of collateral attack under § 2255, with narrow exceptions. The agreement provides that, if the Government does not appeal, Woods may file a petition for collateral relief but may raise only specified issues, including a claim of constitutionally ineffective assistance of counsel ("IAC"). It further states that "no issue may be presented . . . other than those described" in the exceptions.

In the Third Circuit, such waivers are generally enforceable. The Court's analysis proceeds under the familiar framework: (1) whether the waiver was entered knowingly and voluntarily; (2) whether the issues the defendant seeks to raise fall within the scope of the waiver; and (3) whether enforcing the waiver would result in a miscarriage of justice. *See United States v. Mabry*, 536 F.3d 231, 237–38 (3d Cir. 2008); *United States v. Khattak*, 273 F.3d 557, 562–63 (3d Cir. 2001).

Accordingly, Woods's non-IAC claims (for example, freestanding challenges to sentencing determinations or alleged court error not within the waiver's listed exceptions) are barred unless he can show the waiver is unenforceable or that enforcement would result in a miscarriage of justice. He has not done so. The Court therefore enforces the waiver and denies Woods's barred claims on that basis. Because the waiver expressly preserves only an ineffective-assistance claim, the Court addresses Woods's IAC allegations on the merits.

### B. Defendant's IAC Claims

#### 1. First Step Act / Recidivism-risk Designation

Woods argues that Attorney LaCheen was ineffective for failing to object to the Court's sentencing comment that Woods would benefit from First Step Act programming, particularly because the Bureau of Prisons ("BOP") later classified Woods as presenting a "high" risk of recidivism.

The record reflects that Woods did raise First Step Act-related arguments pre-sentencing in a motion to postpone sentencing. *See* ECF 853. In a February 5, 2019 Order denying Woods's motion to postpone sentencing, the Court rejected Woods's argument that the First Step Act's recidivism-risk assessment provisions should affect his sentence, explaining that those provisions concern BOP programming and incentives and are not intended for use at sentencing. The Court also found Woods's reliance on proposed marijuana legislation too speculative to justify delaying sentencing. ECF No. 856. The Government further notes that Woods later raised the BOP "Pattern Score" issue in a compassionate release motion and that the Court had already acknowledged it lacked authority to alter BOP administrative designations.

Given that the Court had already rejected the underlying sentencing-based First Step Act theory as meritless, counsel was not ineffective for declining to reassert the same argument at sentencing or afterward. Woods therefore fails to establish deficient performance or prejudice.

#### 2. Voluntariness of Guilty Plea and Defendant's Hearing Impairment

Woods next argues that his guilty plea was not knowing and voluntary. Liberally construed, his argument has three parts. First, Woods asserts that he did not truly "consent" to the plea because he did not understand what he was admitting when he pleaded guilty—particularly as to the drug-

trafficking and money-laundering counts. In other words, he claims he did not grasp the nature of the charges or the factual basis for those offenses when he entered the plea.

Second, Woods contends that confusion surfaced during the plea colloquy but was not adequately addressed. He points to brief moments in the transcript where he expressed uncertainty or where the record reflects indiscernible responses, and he argues those moments show he did not fully understand the proceedings.

Third, Woods ties that claimed confusion to his asserted difficulty hearing in court. He maintains that hearing issues prevented him from following the colloquy and that neither counsel nor the Court corrected the problem—going so far as to claim they would not clarify matters or permit him to speak up and ask questions.

The record squarely refutes these assertions. At the change-of-plea hearing, the Court conducted a thorough Rule 11 colloquy. Woods affirmed that he understood the proceedings, admitted the factual basis for the offenses, and confirmed that he was pleading guilty of his own free will and without pressure. He was given ample opportunity to ask questions and to address the Court, and the transcript reflects sustained engagement throughout the colloquy notwithstanding two brief, indiscernible moments referenced in his motion. *See* ECF 672.

The record also undermines Woods's suggestion that any hearing difficulty went unnoticed or unaddressed. The Court was made aware of Woods's hearing-related complaints well before sentencing—most notably at the June 1, 2018 hearing on Woods's request for new counsel. At that proceeding, Woods repeatedly engaged with the Court at length, raising a number of concerns, and on several occasions indicated that he was having difficulty hearing or asked for repetition. The Court did not ignore those statements; it acknowledged them in real time and ensured the

discussion could continue, while also advising that the issue could be addressed going forward—particularly once new counsel was appointed.

In addition, Woods's later conduct is inconsistent with the claim that hearing problems prevented him from understanding the case or communicating with the Court. After new counsel was appointed, Woods successfully moved to withdraw his earlier Rule 11(c)(1)(C) plea and then entered an open guilty plea at a second change-of-plea hearing, reflecting that he was able to consult with counsel, make strategic decisions about his plea posture, and proceed through multiple court hearings without any contemporaneous claim that he could not hear or understand the proceedings. For these reasons, even to the extent Woods invokes hearing difficulties to argue that his plea was unknowing or involuntary, the record shows the Court was aware of the concern and that it did not deprive Woods of an opportunity to participate meaningfully in the proceedings.

Woods's after-the-fact disagreement with the Government's evidence, or his present effort to recharacterize the plea as confusion, do not undermine the solemn declarations he made in open court. Since the plea colloquy establishes that Woods understood the nature of the charges and the consequences of pleading guilty and nevertheless chose to plead guilty, his challenge to the voluntariness of the plea is meritless. Accordingly, this claim is denied.

### 3. Right to a Fair Trial and Advice to Plead Guilty

Woods also claims that counsel was ineffective for allegedly failing to advise him of his right to a jury trial and for purportedly presenting a guilty plea as his only option. The record does not support this contention. Woods initially pleaded not guilty and *in fact proceeded to trial*, participating in several days of jury trial proceedings before any guilty plea was entered. That

7

course of events demonstrates that Woods understood he had the right to put the Government to its burden and that a trial was not merely theoretical, but a path he in fact chose to pursue.

Moreover, the plea that Woods ultimately entered during trial was a negotiated Rule 11(c)(1)(C) disposition reached as part of a global resolution involving multiple defendants—*i.e.*, one whose viability depended on the agreement of all parties. Woods later moved to withdraw that C-plea and instead enter an open plea, a request the Court granted. His ability to assess, reject, and restructure his plea posture in this way further confirms that he understood the available procedural options and was not simply taking direction without comprehension.

In these circumstances, Woods cannot establish prejudice under *Strickland*. Even assuming counsel should have reiterated the right to trial, Woods has not shown a reasonable probability that, but for counsel's alleged failure, he would have rejected the plea and insisted on proceeding to verdict. The record reflects a considered decision to plead guilty after trial had begun and, later, a separate considered decision to withdraw the C-plea and plead open. This IAC claim is also therefore denied.

### 4. Failure to Secure Ruling on Downward Departure or Variance

Woods also faults counsel for failing to pursue, develop, or preserve arguments for a downward departure or variance at sentencing. Construing his pro se motion liberally and as summarized in the Government's response, Woods contends that counsel should have pressed additional mitigating grounds, should have objected more vigorously when the Court declined to reduce the sentence further, and should have secured a different result on sentencing.

This IAC claim fails under both prongs of *Strickland*. First, the sentencing record reflects that the Court considered the parties' competing recommendations and the asserted mitigating considerations yet concluded that a substantial term of imprisonment was warranted based on the seriousness of the offenses and the § 3553(a) factors. In particular, Woods's advisory guideline exposure was life imprisonment, and the Court imposed a 228-month sentence—well below that advisory range. On this record, Woods has not shown that counsel's performance fell outside the wide range of reasonable professional assistance. The mere fact that the Court did not adopt Woods's preferred sentencing position does not establish deficient performance.

Second, and independently, Woods cannot establish prejudice. To satisfy *Strickland* at sentencing, Woods must show a reasonable probability that, absent counsel's alleged errors, the Court would have imposed a lower sentence. 466 U.S. at 694. He makes no such showing. He identifies no specific departure provision or discrete mitigating fact that counsel allegedly failed to present, and he does not explain how any additional objection or argument would have overcome the Court's § 3553(a) analysis and resulted in a lower sentence. Nor can he plausibly do so here, where the Court was already varying substantially downward from an advisory recommendation of life imprisonment. Accordingly, Woods's claim that counsel was ineffective with respect to downward departures or variances is denied.

### 5. Finding that Woods Remained Part of the Conspiracy Through 2016

Woods also argues that counsel was ineffective for failing to challenge the Court's finding at sentencing that he remained a member of the charged drug-trafficking conspiracy through 2016. In Woods's view, he had withdrawn earlier, and the Court therefore erred in attributing later conduct to him and in sentencing him on that understanding. The Government responds that the record supported the Court's conclusion as to the conspiracy's duration and Woods's continued

participation, and that counsel cannot be deemed ineffective for declining to pursue an objection that would not have succeeded.

The Court agrees with the Government. This claim fails for two independent reasons. First, Woods offers only a conclusory assertion that he was no longer part of the conspiracy, without identifying competent evidence of withdrawal or pinpointing any legal or factual error in the Court's assessment of the offense conduct. A defendant does not withdraw from a conspiracy by mere inactivity or by self-serving insistence that he was "done"; withdrawal requires an affirmative act inconsistent with the conspiracy's objectives and communicated in a manner reasonably calculated to reach co-conspirators or law enforcement. Woods does not identify any such affirmative act here.

Second, even assuming counsel could have articulated Woods's position more forcefully, Woods cannot satisfy *Strickland* prejudice. The Court's sentencing determination rested on the full record of Woods's conduct and the § 3553(a) factors, and Woods has not shown a reasonable probability that a different framing of the conspiracy end-date would have altered the sentence imposed.

### 6. Innocence on Money-Laundering Counts

Woods further contends that he is "innocent" of the money-laundering charges and that counsel was ineffective for failing to investigate and litigate that defense. Construed liberally, Woods maintains that he did not understand or agree that his conduct satisfied the elements of money laundering and that counsel should have challenged the Government's proof rather than allowing him to plead guilty to those counts. The Government responds that this claim is belied by the record of the plea proceedings: the money-laundering offenses and their factual basis were

10

addressed on the record, Woods admitted the conduct supporting the plea, and nothing at the change-of-plea hearing suggested he was maintaining innocence as to those counts. The Government further argues that Woods identifies no specific exculpatory evidence that counsel failed to uncover, and therefore cannot establish either deficient performance or prejudice under *Strickland*. The Court agrees.

Woods's bare assertion of "innocence" is not enough to establish ineffective assistance. To succeed on an IAC claim premised on failure to investigate or advise, a movant must identify what counsel should have discovered or presented and show a reasonable probability that the result would have been different. Woods does neither. He points to no concrete evidence demonstrating that the money-laundering counts lacked a factual basis, and he does not explain how further investigation would have produced admissible proof negating an essential element of those offenses.

Woods also cannot show prejudice in the guilty-plea context. Even if counsel had done more of what Woods now proposes, Woods must show a reasonable probability that he would have rejected the plea and proceeded to trial. The record reflects that Woods entered a guilty plea after trial had begun, and that at the change-of-plea proceedings he accepted the factual basis for the offenses—including the money-laundering counts—without contemporaneously asserting innocence. On this record, Woods has not carried his burden to show that counsel's performance was constitutionally deficient or that any alleged deficiency affected his decision to plead guilty or the outcome of the case.

## IV.   CONCLUSION

For the foregoing reasons, Woods's motion under 28 U.S.C. § 2255 is denied.