#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | CRIMINAL NO. 16-218-1 |
| JEROME WOODS : | |
| : | |

#### MEMORANDUM

**Perez, J.**                                                         **December 16, 2025**

Jerome Woods, proceeding pro se, has filed (1) a motion in his criminal case seeking return of property under Federal Rule of Criminal Procedure 41(g), and (2) a "Supplemental § 2255 Ineffective Assistance of Counsel" motion in which he claims his counsel rendered ineffective assistance by failing to challenge the forfeiture of that same property. The government has opposed the Rule 41(g) motion but has not filed a separate response to the supplemental § 2255 submission. For the reasons that follow, both motions will be denied without an evidentiary hearing.

I.      **BACKGROUND**[1]

Woods was charged in a multi-defendant indictment involving a large-scale marijuana trafficking organization and a related money-laundering conspiracy. The Second Superseding Indictment included forfeiture notices identifying, among other assets, cash and real properties that the government contended constituted proceeds of, or property involved in, the charged offenses. *See* ECF 55. Those assets included the cash and real properties that Woods now seeks to recover.

After initially proceeding to trial, Woods entered into a plea agreement, and later successfully moved to convert his "C plea" to an open plea. At his September 18, 2018 change-of-

---

[1] A fuller account of the procedural background appears in the Court's prior opinion at ECF 1219.

plea hearing, the government laid out at length the factual basis for the drug-trafficking and money-laundering conspiracies, including that Woods purchased and improved various properties with drug proceeds and titled them in the names of relatives, including his mother, as part of the laundering scheme. ECF 818. The government also described the seizure on May 15, 2015, of two checks — one for $500,000 made payable to Woods's mother and one for approximately $83,241.94 payable to Woods — representing proceeds of the sale of properties associated with the scheme. *Id.* at 43.

During the colloquy, defense counsel acknowledged that most of the properties had been purchased with drug proceeds and placed in others' names in a manner that satisfied the elements of money laundering, and Woods stated that he understood and was "pretty much admitting to everything." ECF 884 at 47. The Court then confirmed with Woods that he understood "the proceeds of this illegal activity will be forfeited" and that "the proceeds or any properties purchased as a result of those proceeds" would be forfeited, and Woods twice answered, "Yes." *Id.* at 48.

On February 7, 2019, the Court sentenced Woods to 228 months' imprisonment. At the close of the hearing, when the Court asked whether there was "anything more from the Government," the prosecutor presented a proposed Preliminary Order of Forfeiture, and the Court signed it. ECF 884. That same day, the Court entered the Preliminary Order of Forfeiture, which included the cash and real properties Woods now seeks to have returned. ECF 859.

On November 1, 2019, Woods appealed his sentence, and in January 2020 the Court of Appeals affirmed. Woods did not challenge the forfeiture on direct appeal.

On July 15, 2020, Judge Surrick entered an order partially vacating and amending the judgment and preliminary forfeiture order as to 15 properties, including 6055 Haverford Avenue. To the extent Woods seeks return of 6055 Haverford Avenue, that claim is therefore moot. ECF Nos. 880 and 1004.

Woods's pro se Rule 41(g) motion seeks return of the following property:

1. $500,000 seized from his mother on May 15, 2015;
2. $83,241.94 seized from his mother on the same date;
3. A $950 money order seized from Woods on June 16, 2016;
4. $937 in currency seized from Woods on June 16, 2016; and
5. Real properties at 145 E. Walnut Lane, 2645 West Jefferson Street, 1524 Ridge Avenue, and 6055 Haverford Avenue (including proceeds from the sale of 1524 Ridge Avenue).

In his motion, Woods asserts that the seizures and forfeiture violated the Fifth Amendment and that the seizure warrants lacked probable cause, invoking *United States v. James Daniel Good Real Prop.,* 510 U.S. 43 (1993) and *Franks v. Delaware,* 438 U.S. 154 (1978). He further contends that the forfeiture was invalid because it was not properly made part of his sentence under Rule 32.2, and he seeks both return of property and monetary damages. *See* ECF 1128.

In a separately captioned "Supplemental § 2255" motion, Woods asserts that counsel rendered ineffective assistance by failing to investigate the seizures and forfeiture, failing to file a motion for return of property, and failing to raise forfeiture issues on direct appeal. He relies on the same alleged defects he asserts in support of his Rule 41(g) motion and asks the Court to vacate his sentence. *See* ECF 1130.

The government filed a detailed opposition to the Rule 41(g) motion, arguing principally that Woods admitted the forfeitability of the property, that a preliminary order of forfeiture was

entered at sentencing and became final as to Woods under Rule 32.2, and that Woods's failure to challenge forfeiture on direct appeal bars this collateral attack. *See* ECF 1133.

## II.     LEGAL STANDARDS

### A.  Rule 41(g)

Rule 41(g) permits "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property" to seek its return. After the conclusion of criminal proceedings, such a motion is treated as a civil equitable action, and the movant bears the burden of showing a lawful entitlement to possession. Once property has been finally forfeited to the United States in the criminal case, however, the defendant ordinarily cannot use Rule 41(g) to collaterally attack that final forfeiture order or to obtain property that he no longer owns. *See* Fed. R. Crim. P. 32.2(b)(4); *United States v. Pelullo*, 178 F.3d 196, 202 (3d Cir. 1999); *United States v. Cheeseman*, 600 F.3d 270, 275 n.4 (3d Cir. 2010).

### B.  Section 2255 Ineffective Assistance of Counsel

Under 28 U.S.C. § 2255, a federal prisoner may seek to vacate, set aside, or correct his sentence if it "was imposed in violation of the Constitution or laws of the United States." To prevail on an ineffective-assistance claim, a petitioner must satisfy *Strickland v. Washington* by showing (1) deficient performance, meaning counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) prejudice, meaning a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 466 U.S. 668, 687–88, 694 (1984). The Court may dispose of such claims on prejudice alone where the record demonstrates no reasonable probability of a different result had counsel acted as the petitioner now suggests. No evidentiary hearing is required where "the motion

4

and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

### III. DISCUSSION

Woods is not entitled to relief under Rule 41(g) because the property he seeks was forfeited as part of his criminal judgment, the forfeiture order became final as to him at sentencing, and he did not challenge it on direct appeal. In any event, his sworn plea admissions confirm that he understood and agreed that proceeds and property purchased with proceeds would be forfeited, and his remaining constitutional and procedural arguments do not provide a basis to unwind a final criminal forfeiture. Finally, Rule 41(g) does not authorize money damages. The Court addresses these points in turn, and then turns to Woods's supplemental § 2255 ineffective-assistance claim.

**1. Effect of the preliminary order of forfeiture and failure to appeal**

First, as the government correctly argues, the property at issue has already been forfeited as part of Woods's criminal judgment, and the preliminary order of forfeiture entered at sentencing became final as to him at that time. Rule 32.2(b)(4) provides that a forfeiture order "becomes final as to the defendant" at sentencing and that it "must be made a part of the sentence and included in the judgment." The Court did precisely that here: at the conclusion of the sentencing hearing, the government presented a proposed preliminary order of forfeiture and the Court signed and entered it the same day as the judgment.

As the government notes, under Third Circuit precedent, an order of forfeiture entered at sentencing is a final, appealable component of the defendant's sentence. *Pelullo* explains that a criminal forfeiture order "is a final order with respect to the defendant from which he can appeal," and that a preliminary forfeiture order "terminates all issues presented by the defendant and leaves

5

nothing to be done except enforce by execution what has been determined." 178 F.3d at 860. Likewise, *United States v. Cheeseman* reiterates that "a forfeiture becomes final at sentencing and … a defendant may appeal a forfeiture order once sentenced." 600 F.3d 270, 275 n.4 (3d Cir. 2010).

Woods did not raise any challenge to forfeiture on direct appeal, despite having the opportunity to do so. As the government correctly observes, that failure precludes him from now seeking to undo the forfeiture collaterally via a Rule 41(g) motion. Courts have recognized that "a criminal forfeiture is part of the defendant's sentence and must be challenged on direct appeal or not at all." *Young v. United States*, 489 F.3d 313, 315 (7th Cir. 2007).

Furthermore, following entry of the preliminary order of forfeiture, Woods no longer had any legally cognizable interest in the forfeited property. In *United States v. O'Brien*, the Third Circuit held that a defendant "generally has no standing to participate in the ancillary proceeding that takes place after the forfeiture order is entered at sentencing" and emphasized that the ancillary proceeding is for third parties "other than the defendant" to assert interests in property. *Id.* at 348 (citing *Pelullo*, 178 F.3d at 202). As the government correctly points out, *O'Brien* thus confirms that once the preliminary order was entered, Woods had no remaining right or title in the forfeited assets.

Because the forfeiture became final as to Woods at sentencing and he did not appeal it, Rule 41(g) does not provide him a vehicle to relitigate that final forfeiture order or reclaim property the United States now owns.

2. **Woods's Admissions and Agreement to Forfeiture**

Second, the record of the plea colloquy cuts against any suggestion that forfeiture was imposed without notice or over Woods's objection. During the change-of-plea hearing, defense

counsel expressly acknowledged that "most" of the properties were purchased with drug proceeds and titled in others' names in a way that satisfied the elements of money laundering, and Woods agreed, stating he was "pretty much admitting to everything."

The government then described in detail how Woods used drug proceeds to buy and improve real properties and to launder money through vehicles, sham loans, and his mother's involvement in the May 15, 2015 real estate settlement, at which agents seized the $500,000 and $83,241.94 checks. Woods confirmed that he heard the factual recitation, that he read along in the plea memorandum, that he understood he was admitting those facts, and that he did so.

Finally, the Court expressly asked:

> With regard to the forfeiture, you understand that the proceeds of this illegal activity will be forfeited; do you understand that?
>
> WOODS: Yes.
>
> THE COURT: The proceeds or any properties purchases as a result of those proceeds; you understand that?
>
> WOODS: Yes.

ECF 818 at 47-48. These admissions under oath undermine his current assertions that he did not understand or agree to forfeiture, or that the property was untainted. They also undermine his factual premise that the properties and funds were legitimate assets unrelated to the offenses.

### 3. Due Process and Seizure Challenges

Woods raises several arguments about the manner in which the government seized the property — including reliance on *United States v. James Daniel Good Real Property* and *Franks v. Delaware* — asserting that there was no exigency, that the government failed to use less restrictive alternatives, and that the seizure warrant affidavits lacked probable cause and omitted

material facts. Even assuming *arguendo* that one could raise such seizure-related challenges postconviction through Rule 41(g), they provide no basis for relief here.

First, to the extent Woods seeks to suppress evidence obtained during the seizures or to invalidate the seizure warrants themselves, those are classic trial and direct-appeal issues. Woods proceeded to trial, later pled guilty mid-trial, and did not pursue any seizure-based challenges on direct appeal. He may not now revive those Fourth and Fifth Amendment arguments years later through a Rule 41(g) motion after his conviction and forfeiture have become final.

Second, *Good Real Property* arose in a very different posture. There, the government brought a civil forfeiture action against a parcel of real property before any criminal conviction. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993). The Supreme Court held that when the government seeks to seize real property in that civil, pre-judgment context, the Due Process Clause generally requires notice and an opportunity to be heard before the property is taken, unless the government can show exigent circumstances. *Id.*

Woods, by contrast, brings his challenge in a completed criminal case, years after his conviction and after this Court entered criminal forfeiture orders as part of his sentence. He seeks to undo the forfeiture of both real properties and cash proceeds—including two checks totaling over $580,000 and other currency—which are inherently fungible and easily dissipated. Whatever additional pre-seizure process might be required in a civil action directed at real property, the government's authority in this case to restrain or seize tainted assets and to forfeit Woods's interests in those assets rests on the criminal forfeiture framework: the forfeiture allegations in the indictment, Woods's guilty plea and factual admissions as to the forfeitability of the assets, and the Court's entry of a forfeiture order at sentencing under Rule 32.2. It is that criminal forfeiture framework that governs here, not the civil, pre-seizure framework at issue in *Good Real Property*.

That is the context in which Woods knowingly accepted when he pled guilty and acknowledged that proceeds and properties acquired with drug proceeds would be forfeited.

Any alleged deficiencies in the seizure warrant affidavits do not change the fact that Woods later admitted, under oath, the essential facts establishing that the seized assets were proceeds of, or property involved in, his crimes and that they were therefore subject to forfeiture. That admission itself provides a sufficient factual basis for forfeiture regardless of any earlier dispute about probable cause at the time of seizure.

In short, even if these arguments were not barred by the final forfeiture order and by Woods's failure to raise them on direct appeal, they would not justify setting aside the forfeiture or ordering return of property at this late stage.

**4. Rule 32.2 and "forfeiture not part of the sentence"**

Woods also contends that the forfeiture is invalid because it was not properly "included" in his sentence under Rule 32.2(b), and that the Court did not conduct a forfeiture hearing.

The record refutes both contentions. As discussed above, the Court expressly advised Woods at the plea that proceeds and properties purchased with drug proceeds would be forfeited, and Woods acknowledged his understanding. At sentencing, the Court signed and entered a preliminary order of forfeiture contemporaneously with the judgment. Under Rule 32.2(b)(4), that order became final as to Woods at sentencing and formed part of his sentence.

Rule 32.2(b)(1)(B) provides for a forfeiture hearing only "if the forfeiture is contested." Woods did not contest forfeiture at sentencing, despite having been on notice since the indictment and plea that the government would seek forfeiture of the specified assets. On this record, any suggestion that the Court erred by failing to sua sponte conduct an evidentiary forfeiture hearing

9

is unavailing. And in any event, any such alleged procedural error should have been addressed on direct appeal. It does not furnish a basis now to undo the forfeiture via Rule 41(g).

   5. **Sovereign immunity and request for damages**

Finally, Woods seeks monetary damages for alleged violations of his constitutional rights arising from the seizures and forfeiture. Rule 41(g), however, provides only for return of property in equity; it does not waive the sovereign immunity of the United States for an award of money damages. To the extent Woods seeks damages from the government under Rule 41(g), those claims are barred by sovereign immunity and must be denied.

   C. **Supplemental § 2255 ineffective assistance motion**

Woods's supplemental § 2255 motion focuses on counsel's handling of forfeiture. He asserts that counsel failed to research forfeiture law, failed to file a motion for return of property, failed to appreciate earlier "verified claims" of ownership, and failed to raise forfeiture issues on appeal. He contends that had counsel done so, the forfeiture would have been avoided and his sentence vacated. Although the government has not filed a separate response to this supplemental filing, the Court is obligated to consider the claim on the merits. The absence of a response does not relieve Woods of his burden under *Strickland*, and the existing record conclusively demonstrates that he is not entitled to relief.

The Court begins, and could end its analysis, with *Strickland*'s prejudice prong. To show prejudice, Woods must demonstrate a reasonable probability that, but for counsel's allegedly deficient performance, the result of the proceeding would have been different —here, that a timely motion or appeal challenging forfeiture likely would have succeeded.

The analysis above forecloses such a showing. As discussed, the property at issue was the subject of a preliminary order of forfeiture entered at sentencing; that order became final as to Woods; he had the opportunity to appeal but did not; and his current challenges are barred and, in any event, lack substantive merit given his sworn admissions regarding the forfeitability of the property.

On this record, there is no reasonable probability that:

- a post-plea Rule 41(g) motion filed by counsel would have succeeded in the face of Woods's plea admissions and the forfeiture provisions of the indictment and plea;
- an objection at sentencing to the entry of the preliminary forfeiture order would have led the Court to deny forfeiture outright; or
- a direct appeal challenging forfeiture would have resulted in reversal, given Woods's explicit admissions and the Court's compliance with Rule 32.2(b)(4) in entering an order at sentencing.

Nor is there a reasonable probability that any of Woods's particular theories (i.e. *Good Real Property* due-process claims or *Franks* challenges to seizure affidavits) would have succeeded on appeal for the reasons already described. At most, Woods identifies issues that could have been raised, but § 2255 requires more than speculation that additional arguments might have been presented; it requires a showing that those arguments likely would have changed the outcome. On this record, they would not.

Because Woods cannot establish prejudice, his ineffective-assistance claim fails regardless of whether counsel's performance was objectively reasonable.

Even if the Court were to reach *Strickland*'s performance prong, Woods has not shown that counsel acted outside the wide range of reasonable professional assistance. Counsel litigated Woods's case through trial and then negotiated an open plea in which Woods avoided a potentially

11

higher sentence. At the plea, counsel acknowledged that the properties were tied to drug proceeds and that the money-laundering charges were supported by the evidence, and Woods agreed. Under those circumstances — with a superseding indictment giving clear forfeiture notice, a plea colloquy in which Woods admitted the forfeitability of the assets, and a sentencing at which the Court entered a preliminary order of forfeiture — it was not objectively unreasonable for counsel to focus his efforts on the custodial sentence rather than on contesting forfeiture he and his client had effectively conceded.

Likewise, the decision not to raise forfeiture issues on appeal falls within the "virtually unchallengeable" realm of appellate strategy, particularly where, as here, those issues would have faced the formidable obstacles discussed above. Counsel is not constitutionally deficient for failing to pursue arguments that are unlikely to succeed.

Because Woods has not demonstrated either deficient performance or prejudice, his ineffective-assistance claim provides no basis for § 2255 relief.

## IV.     CONCLUSION

For the foregoing reasons, the Court denies both (1) Woods's motion under Federal Rule of Criminal Procedure 41(g) for return of forfeited property; and (2) Woods's supplemental § 2255 motion asserting ineffective assistance of counsel in connection with forfeiture.